**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARIEL ZUCKERMAN, | Civil Action No.: 1:20-cv-08742-VEC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GW ACQUISITION LLC d/b/a G&W INDUSTRIES, MICHAEL MARINOFF, in his individual and professional capacities, and ALBERT MALEH, in his individual and professional capacities, | |
| Defendants. | |

Plaintiff Ariel Zuckerman ("Plaintiff") by and through her attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants GW Acquisition LLC d/b/a G&W Industries ("G&W" or the "Company"), Michael Marinoff ("Marinoff"), and Albert Maleh ("Maleh") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

*"Can I have some milk in my coffee? . . .*

*I was hoping you could just squirt it in there."*

*"We're turning into a regular dairy farm."*

1.     These were just a few of the juvenile, harassing, and deeply offensive remarks Plaintiff was forced to endure for the crime of requesting breaks during the workday to pump breast milk for her newborn child.

2.     After approximately seven successful years at G&W, everything changed for Plaintiff after she disclosed her pregnancy and requested maternity leave.

1

3.      First, Defendants threatened to discontinue her health insurance and withheld her earned commissions in an effort to force her back to work early.

4.      Upon her return, Defendants initially refused to provide Plaintiff with a private space to pump breast milk.

5.      Even after they provided her with a curtain for privacy, Marinoff and Maleh, owners of G&W, harassed and publicly mocked Plaintiff for pumping at work.

6.      Following the COVID-19 pandemic, Plaintiff requested to work from home due to childcare needs and to continue seeking treatment for generalized anxiety disorder – a disability severely exacerbated by Defendants' relentless humiliation of Plaintiff in front of her customers and colleagues.

7.      Defendants rejected her request and instead responded with an ultimatum: work from home at two-thirds of her salary or report back to work without any accommodation at all.

8.      Having no other choice, Plaintiff agreed to the retaliatory pay cut.

9.      When Plaintiff asserted claims against Defendants for, among other things, pregnancy and disability discrimination, Marinoff and Maleh categorically denied ever mocking her for pumping and continued to withhold Plaintiff's earned commissions (a significant portion of which remains unpaid to this date) as punishment for her protected activities.

10.     Shocked by this bald-faced lie, Plaintiff sent Defendants audio recordings proving that they had harassed her for pumping at work.

11.     Just weeks later, in the middle of a supposed "interactive process" concerning Plaintiff's request to work from home as a reasonable accommodation, Defendants fired her for "surreptitiously recording meetings" at work – an outright admission of retaliatory animus.

12.     Indeed, Defendants did not fire Plaintiff for recording conversations, but because of what she recorded.

13.     To redress these wrongs, Plaintiff brings claims for violations of: (i) Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (ii) the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); (iii) the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); (iv) the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"); and (v) the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL").

## JURISDICTION AND VENUE

14.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the ADA.

15.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under New York State and City law.

16.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PREREQUISITES

17.     On or around September 10, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of Title VII and the ADA.

18.     On or around September 30, 2020, Plaintiff received a Notice of Right to Sue from the EEOC.

19.     Plaintiff filed her initial Complaint asserting claims under Title VII and the ADA fewer than 90 days after receiving her Notice of Right to Sue, on October 20, 2020 (*see* ECF No. 1).

20.     Any and all other prerequisites to the filing of this action have been met.

## PARTIES

**A.     Plaintiff Ariel Zuckerman**

21.     Plaintiff is a resident of the State of New York and was employed by Defendants from in or around June 2013 through on or around August 10, 2020.

22.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statutes.

**B.     Defendant GW Acquisition LLC d/b/a G&W Industries**

23.     G&W is a domestic limited liability company with its principal place of business located at 1370 Broadway, New York, New York 10018.

24.     At all relevant times, G&W was an "employer" within the meaning of all relevant statutes.

**C.     Defendant Michael Marinoff**

25.     Marinoff is a citizen of the State of New York and a co-founder and co-owner of G&W.

26.     At all relevant times, Marinoff established, implemented, disseminated, and controlled all of G&W's employment policies.

27.     At all relevant times, Marinoff controlled and directed the terms and conditions of Plaintiff's employment.

28.     At all relevant times, Marinoff maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

29.     At all relevant times, Marinoff was an "employer" within the meaning of all relevant statutes.

**D.      Defendant Albert Maleh**

30.     Maleh is a citizen of the State of New York and a co-founder and co-owner of G&W.

31.     At all relevant times, Maleh established, implemented, disseminated, and controlled all of G&W's employment policies.

32.     At all relevant times, Maleh controlled and directed the terms and conditions of Plaintiff's employment.

33.     At all relevant times, Maleh maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

34.     At all relevant times, Maleh was an "employer" within the meaning of all relevant statutes.

## FACTS

**A.      Background**

35.     G&W, which manufactures and sells children's apparel, hired Plaintiff as an Account Executive in June 2013.

36.     Over the course of her seven years in this role, Plaintiff proved to be one of G&W's most vital employees by, among other things, building new accounts and dramatically improving G&W's relationships with its existing vendors.

37.     Accordingly, after her first year at the Company, Defendants incentivized Plaintiff to continue her career there by offering her an increase in her base salary and the opportunity to earn non-discretionary commissions.

38.     Pursuant to the agreed terms of her employment and commission structure, Plaintiff was entitled to a base salary of $75,000, as well as non-discretionary commissions based on a percentage of her total sales as an Account Executive.

39.     Specifically, throughout the relevant period, Defendants agreed to pay Plaintiff a 1% commission on all sales she generated with a gross profit margin percentage of 20% or higher.

40.     Defendants also agreed to pay Plaintiff a 0.5% commission on sales she generated with a gross profit margin percentage of less than 20.[1]

41.     Defendants deemed Plaintiff's commissions earned upon G&W's shipment of the order to the given buyer.

42.     Pursuant to the agreed terms of Plaintiff's employment, Defendants were to pay Plaintiff's commissions twice each year.

43.     First, Defendants were to pay Plaintiff in or around August of each year for commissions earned from January 1 through June 30.

44.     Defendants were to pay Plaintiff's January-June commissions pursuant to the formulas detailed *supra* ¶¶ 39-40.

45.     Second, Defendants were to pay Plaintiff in or around February of each year for commissions earned from July 1 through December 31 of the previous year.

---

[1] Defendants previously paid Plaintiff's commissions only once per year and based on her net sales, with costs deducted on the front end; however, Defendants later revised Plaintiff's commissions structure in the manner described herein.  As such, the unpaid commissions at issue in this action were to be calculated based on Plaintiff's gross sales.

46.     Defendants were to pay Plaintiff's July-December commissions in the same manner, but with $500,000 deducted from Plaintiff's gross sales before applying the commission formulas.

47.     As detailed below, however, Defendants often failed to pay Plaintiff's commissions in accordance with the aforementioned agreed terms of her employment, either paying her late or refusing to tender her commissions at all.

**B.     Plaintiff's Maternity Leave and Request for a Sanitary Space to Express Breast Milk**

48.     In late October 2018, Plaintiff disclosed to Defendants that she was pregnant with her first child.

49.     Further, Plaintiff explained that she intended to breast feed her newborn baby.

50.     In anticipation of doing so, Plaintiff requested a sanitary and private space to take lactation breaks upon her return from maternity leave.

51.     Almost immediately, Marinoff and Maleh began mocking Plaintiff's decision to breast feed, asking her, "You're not really going to breast feed, are you?" and warning her, "We can't have you pumping at work."

52.     In a subsequent meeting with Defendants, Plaintiff requested that the Company grant her four months of unpaid maternity leave.

53.     Defendants initially denied her request, but later granted her three months of leave.

54.     Plaintiff was paid during maternity leave under a short-term disability policy and the New York State Paid Family Leave Law.

55.     Defendants did not pay Plaintiff directly during her maternity leave.

56.     In February 2019, shortly before the birth of her child, Marinoff and Maleh notified Plaintiff that Defendants would no longer pay for her insurance coverage if she took her agreed-upon three-month maternity leave.

57.     This clear act of retaliation terrified Plaintiff, as she feared that her newborn's health would be impacted by the loss of coverage.

58.     At best, Defendants' planned rescission of Plaintiff's insurance coverage projected to cause her massive financial distress due to the high cost of obtaining replacement insurance on the open market.

59.     Only after Plaintiff researched her rights and proved to Marinoff and Maleh that the New York State Paid Family Leave Law required G&W to maintain her insurance did Defendants agree to do so.

60.     Nevertheless, Defendants had already made clear their intent to punish Plaintiff for taking maternity leave.

61.     Plaintiff gave birth to her son on April 29, 2019.

62.     Approximately halfway through Plaintiff's agreed-upon maternity leave, Defendants began pressuring her to return to work.

63.     After Plaintiff made clear that she intended to take her full, previously approved, three-month leave, Defendants punished Plaintiff by withholding commissions earned during the first half of 2019 and owed to her in August 2019.

64.     Plaintiff complained that this violated the agreed terms of her employment.

65.     Defendants expressly conditioned the payment of these wages upon Plaintiff's return from maternity leave.

66.     On July 16, 2019, prior to returning to work, Plaintiff reminded Marinoff and Maleh of their legal obligation to provide her with a sanitary and private space to express breast milk.

67.     Marinoff and Maleh were reticent to accommodate Plaintiff, so she proposed a simple solution: that the Company purchase an inexpensive wall curtain to provide her with the clean and private space to which she was entitled.

68.     Marinoff and Maleh immediately pushed back, telling Plaintiff that the noise from the pump would be "too loud" and "distracting" to other employees, and further suggesting, "Why don't you just use the bathroom?"

69.     Plaintiff followed up via email on July 22, 2019; however, neither Marinoff nor Maleh responded.

C.     **Defendants' Fostering of a Hostile Work Environment Upon Plaintiff's Return to Work**

70.     Upon Plaintiff's return to work on or around July 30, 2019, she discovered that Defendants had failed to set up a private space to accommodate her, despite Plaintiff's repeated requests for the same both before and during her maternity leave.

71.     Without a sanitary, private space to use, Plaintiff was forced to pump in a cramped and dusty closet three times that day.

72.     Later that same day, Plaintiff approached Marinoff to ask how Defendants intended to accommodate her, if at all.

73.     Marinoff brushed her off, telling her that he had "other priorities."

74.     Maleh, on the other hand, was incredulous that Plaintiff found the small and dirty closet that she had used earlier in the day to be unsuitable.

75.     When Plaintiff pointed out that the dingy closet was unsanitary and needed to be cleaned, Maleh refused to take any action.

76.     Notably, Defendants failed to compensate Plaintiff for the work she performed on her first day back from maternity leave.

77.     After numerous unaddressed complaints, Plaintiff informed Maleh that Defendants were legally required to provide her with a suitable space to express breast milk.

78.     Defendants then begrudgingly allowed Plaintiff to put up a curtain, as she had initially proposed in mid-July, though Maleh continued to complain that the curtain would "mess up the aesthetic" in the office.

79.     During the same conversation, Maleh also notified Plaintiff that Defendants planned to continue withholding her earned commissions, which had been owed to her since August 2019.

80.     Plaintiff again complained that this violated the agreed terms of her employment.

81.     Defendants did not pay Plaintiff the commissions she was owed on August 2019 until the October and November 2019, during which Defendants paid Plaintiff her commissions in two parts.

82.     Throughout the rest of the day, Maleh criticized Plaintiff for pumping at work and attempted to discourage her from continuing to do so.

83.     By way of example only, Maleh told Plaintiff, "Breast feeding isn't necessary after three months," "Formula was invented for a reason," and, "Breast feeding is a pain in the ass."

84.     He then mocked Plaintiff by asking whether she was going to be "one of those women who breast feeds until their child is one."

85.     After July 2019, Marinoff, in particular, regularly harassed and humiliated Plaintiff for her choice to breast feed her child and exercise her right to pump at work.

86.     For example, in early August 2019, Marinoff noticed Plaintiff washing the bottles in which she pumped and storing breast milk in the Company's refrigerator.

87.     He approached Plaintiff and asked, "Can I have some milk in my coffee?"

88.     He then added, "I was hoping you could just squirt it in there."

89.     Further, on or around December 19, 2019, Plaintiff attended a holiday dinner that the Company hosted for a vendor with whom she had cultivated a close professional relationship (the "Vendor").

90.     Marinoff mocked Plaintiff to the rest of the table – which comprised mostly women, including Plaintiff's G&W colleagues and valuable contacts at the Vendor – for agreeing to donate breast milk to the New York Milk Bank.

91.     Unsurprisingly, Plaintiff's altruism in doing so was lost on Marinoff, whose comments clearly offended the others at the table.

92.     Despite being told repeatedly that their conduct, comments, and behavior were wildly inappropriate, Marinoff's and Maleh's harassment only escalated further.

93.     For example, at two separate meetings in or around January 2020, Marinoff joked to Plaintiff's colleagues and G&W buyers that Plaintiff produced so much breast milk that she could single handedly put the Borden Milk Company out of business.

94.     Further, Maleh frequently yelled "Pump station!" and "Pumper!" when he walked past Plaintiff's designated pumping area in the office.

95.     On or around February 27, 2020, Marinoff openly berated Plaintiff in front of staff and a representative of the Vendor after Plaintiff notified him that she would need to take her regularly scheduled lactation break during a vendor meeting.

96.     After Plaintiff left the meeting and began her lactation break, Marinoff pursued her, walking past the designated pumping area and yelling, "Hey pumper, are you done?"

97.     Upon Plaintiff's return to the meeting, Marinoff openly commented, "All she does is pump," and, "At this point she pumps straight into a metal milk jug and carries it around."

98.     Marinoff also mocked Plaintiff with the same crude joke about the Borden Milk Company he previously made in or around January 2020.

99.     In or around early March 2020, Plaintiff was having a conversation with four of her female colleagues, with Marinoff and Maleh also present.

100.    Maleh interrupted the conversation to ask which employee was currently using the supply closet for lactation breaks.

101.    Plaintiff informed him that another employee, who also had a young child, was using it to pump breast milk.

102.    Marinoff then turned to the group of women and said, "We're turning into a regular dairy farm."

103.    He then added, sarcastically, "Did you know Ariel donated 10,000 gallons of milk?"

104.    In or around 2011, before Plaintiff was working at G&W, her treating psychiatrist at the time diagnosed her with generalized anxiety disorder, which substantially interferes with her ability to sleep, concentrate, think, and interact with others.

105.    Defendants' pervasive harassment severely exacerbated Plaintiff's anxiety and the substantial limitations on Plaintiff's major life functions associated therewith.

106.    By way of example only, from the disclosure of her pregnancy through her termination, Plaintiff suffered from increased difficulty sleeping and concentrating as a result of Defendants' harassment.

107.    She also became even more anxious interacting with her colleagues, limiting them to the extent practicable, as Defendants had made a spectacle of her before the entire office based on her decision to breast feed.

108.    Nevertheless, Plaintiff continued to perform her job duties admirably and successfully, just as she had over the course of her nearly decade-long career at G&W.

**D.      Plaintiff's Request to Work from Home to Tend to Childcare Needs**

109.    On March 19, 2020, Plaintiff requested permission from Defendants to work from home for two weeks to care for her child.

110.    As Plaintiff explained via email, "With the current COVID-19 pandemic, I have lost my childcare and have to stay home to care for my child.  Also, I have been advised that if I have to physically go into the office, then I have to stop breast feeding because it is highly likely that I will be exposed to COVID-19 and even if I am not symptomatic, I can pass it to my child who is extremely vulnerable."

111.    That same day, Marinoff and Maleh called Plaintiff to tell her that she was being furloughed and taken off of the Company's payroll, effective immediately.

112.    In the same conversation, Marinoff and Maleh acknowledged that they owed Plaintiff earned commissions due to her in February 2020 – distinct from the August 2019 commissions belatedly paid to her in October and November 2019 (*see supra* ¶ 81).

113.    However, Marinoff and Maleh said they would continue to "hold" her wages until further notice.

114.   Plaintiff again complained that this violated the agreed terms of her employment.

**E.**   **Retaliation against Plaintiff for Requesting a Reasonable Accommodation**

115.   In or around May 2020, Defendants put Plaintiff back on payroll.

116.   In or around June 2020, Defendants notified Plaintiff that they expected her back in the office on July 6, 2020.

117.   During Plaintiff's time away from the office, she had continued seeking treatment for her generalized anxiety disorder, which was severely exacerbated by the hostile work environment at G&W.

118.   Plaintiff's treating psychiatrist was concerned that prematurely returning to work, where she was likely to be subjected to further harassment, might further exacerbate her disability.

119.   Plaintiff shared in these concerns.

120.   Accordingly, on or around June 15, 2020, Plaintiff spoke to Maleh over the phone and complained about Defendants' harassment of her for pumping at work.

121.   Plaintiff also requested to continue working from home for four to six months as a reasonable accommodation and sent Defendants a note from her treating psychiatrist supporting the request.

122.   Plaintiff would be able to perform the essential functions of her job with this proposed reasonable accommodation, as she was capable of carrying out her job duties remotely.

123.   Maleh, on behalf of Defendants, rejected Plaintiff's request and instead permitted her to work from home only until September 7, 2020 – less than half of the time her psychiatrist had recommended.

124.   During the same conversation, Maleh advised Plaintiff that Defendants would continue to withhold her long overdue earned commissions.

125.   Plaintiff again complained that this violated the agreed terms of her employment.

126.   Defendants eventually paid Plaintiff the commissions she was owed in or around February 2020, albeit several months after the commissions were due.

127.   Specifically, Defendants paid $10,000 of Plaintiff's earned commissions on or around June 4, 2020.

128.   Defendants did not pay Plaintiff additional commissions totaling approximately $21,000 until on or around July 2, 2020, after they received a letter from Plaintiff's counsel asserting claims against them (*see infra* ¶ 140).

129.   To date, Defendants have not paid Plaintiff at least $27,327.19 in earned commissions.

130.   This comprises both commissions Defendants have simply refused to pay outright, as well as those Defendants unlawfully deducted from Plaintiff's total commissions, despite the fact that all conditions precedent to the deeming of those commissions earned had been met.

131.   Plaintiff is likely owed even more in unpaid commissions; however, she does not have access to the most recent reports reflecting the same.

132.   After initially permitting Plaintiff to work from home until September 7, 2020, Defendants requested details regarding her disability.

133.   During a June 23, 2020 phone call, Plaintiff again explained to Maleh, and this time Marinoff as well, that her generalized anxiety disorder was exacerbated by their harassment based on her decision to pump breast milk at work.

134.   Marinoff and Maleh quickly reneged on their agreement to provide her with a reasonable accommodation.

135.     Indeed, during the call, Marinoff and Maleh told Plaintiff that they had agreed to allow her to work from home until September 7, 2020 because they believed her anxiety was related to COVID-19.

136.     After learning that Plaintiff's anxiety stemmed from their harassment, however, they were no longer willing to provide her with the accommodation.

137.     Instead, they gave Plaintiff an ultimatum: work from home at two-thirds of her salary until September 7, 2020 – again, less than half of the time her treating psychiatrist recommended – or report back to work without any accommodation at all.

138.     Further, Marinoff and Maleh again reminded Plaintiff that they planned to continue withholding her earned commissions.

139.     Having no other choice, on or around June 25, 2020, Plaintiff agreed to the retaliatory pay cut.

**F.     Retaliation against Plaintiff for Engaging in Further Protected Activities**

140.     On June 30, 2020, Plaintiff asserted claims against Defendants for, among other things, pregnancy and disability discrimination by sending G&W a letter through counsel.

141.     On July 22, 2020, Plaintiff emailed Maleh and Marinoff regarding the discrimination and retaliation she had endured since disclosing her pregnancy and asked them to put into place certain safeguards prior to her planned return to work on September 7, 2020.

142.     These included, among other things, confirming that Plaintiff would be provided a private and sanitary lactation room.

143.     Plaintiff also asked that Defendants designate a Human Resources representative, as she had previously been instructed to raise complaints of discrimination or retaliation with Marinoff and Maleh directly or with Marinoff's wife, who also works for G&W.

144.     Needless to say, Plaintiff was not comfortable complaining of discrimination to the two men discriminating against her, nor was she comfortable complaining to one of their spouses.

145.     Because Marinoff and Maleh denied harassing Plaintiff for pumping breast milk and agreeing to allow her to work from home until September 7, 2020, she also sent Defendants three audio recordings through counsel.

146.     Two of the recordings documented Marinoff's and Maleh's harassing comments; the other documented Maleh's agreement to allow Plaintiff to work from home until September 7, 2020, which Defendants later rescinded.

147.     On July 27, 2020, Defendants sent Plaintiff a lengthy letter explaining that they were unwilling to put into place the safeguards she requested in her July 22, 2020 email.

148.     Defendants also sent Plaintiff a questionnaire regarding her disability to be completed by her treating psychiatrist "in order to assist with the interactive process" regarding her requested reasonable accommodations.

149.     Plaintiff agreed to provide her treating psychiatrist with the questionnaire and advised Defendants that she secured an appointment with her treating psychiatrist for August 6, 2020.

150.     On August 6, 2020, Defendants sent Plaintiff another lengthy letter.

151.     While framed as the findings of a purported investigation, the letter simply provided categorical denials of each of the allegations in the June 30, 2020 correspondence from Plaintiff's attorneys.

152.     Defendants even denied mocking Plaintiff for taking breaks to pump breast milk, despite the fact that, on July 22, 2020, her attorneys provided them audio recordings documenting their harassment.

153.    On Friday, August 7, 2020, Defendants requested that the questionnaire, which was provided to Plaintiff's treating psychiatrist less than 24 hours earlier, be completed and returned to Defendants by the close of business that day.

154.    Through counsel, Plaintiff responded that the questionnaire was provided to the treating psychiatrist on August 6, 2020 and, as such, Defendants' request was unreasonable, especially in the midst of the COVID-19 pandemic.

155.    Plaintiff also explained that she had no control over the timeline for her psychiatrist's completion of the questionnaire but anticipated a timely return.

G.    **Plaintiff's Blatantly Discriminatory and Retaliatory Termination**

156.    On the next business day – Monday, August 10, 2020 – while Plaintiff was still waiting for her treating psychiatrist to complete Defendants' questionnaire as part of a supposed interactive process – Defendants terminated Plaintiff's employment.

157.    Defendants claimed that they were firing Plaintiff because she "surreptitiously recorded meetings with G&W's managers and buyers on company premises without the parties' knowledge or consent."

158.    This undoubtedly referred to the audio recordings Plaintiff provided through counsel on July 22, 2020.

159.    Plaintiff recorded the conversations to document the discrimination she was enduring and support her various protected complaints.

160.    To be clear, none of the aforementioned recordings contain any discussions of G&W's or any buyers' business matters.

161.    In other words, Defendants' stated reasons for firing Plaintiff are transparently pretextual, if not an outright admission of retaliatory animus, as her recording of the conversations itself amounts to protected activity.

162.    Put simply, Defendants did not fire Plaintiff for recording conversations, but because of what she recorded.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF TITLE VII: SEX DISCRIMINATION
### *(Against G&W)*

163.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

164.    During the full statutory period, Plaintiff was protected by the provisions of Title VII, as amended by the PDA, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

165.    During the full statutory period, G&W was subject to the provisions of Title VII, as amended by the PDA, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

166.    By the actions described above, among others, G&W discriminated against Plaintiff based on her sex and pregnancy in violation of Title VII by, *inter alia*, subjecting her to a hostile work environment, withholding her earned commissions, reducing her compensation, and terminating her employment.

167.    G&W's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

168.    As a direct and proximate result of G&W's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

169.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF TITLE VII: RETALIATION
### *(Against G&W)*

170.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

171.     During the full statutory period, Plaintiff was protected by the provisions of Title VII, as amended by the PDA, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

172.     During the full statutory period, G&W was subject to the provisions of Title VII, as amended by the PDA, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

173.     As set forth above, Plaintiff engaged in protected activities under Title VII by, *inter alia*, complaining of sex and pregnancy discrimination both verbally and in writing, and asserting claims of sex and pregnancy discrimination via letter sent through counsel.

174.     By the actions described above, among others, G&W retaliated against Plaintiff for engaging in protected activities by, *inter alia*, withholding her earned commissions, reducing her compensation, and terminating her employment.

175.     G&W's unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

176.     As a direct and proximate result of G&W's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

177.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE ADA: DISABILITY DISCRIMINATION**
*(Against G&W)*

178.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

179.    During the full statutory period, Plaintiff was protected by the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq*., and all applicable regulations thereunder.

180.    During the full statutory period, G&W was subject to the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq*., and all applicable regulations thereunder.

181.    As set forth above, G&W was aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, generalized anxiety disorder.

182.    By the actions described above, among others, G&W discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

183.    G&W's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the ADA.

184.    As a direct and proximate result of G&W's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

185.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

<u>FOURTH CAUSE OF ACTION</u>
<u>VIOLATIONS OF THE ADA: RETALIATION</u>
*(Against G&W)*

186.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

187.    During the full statutory period, Plaintiff was protected by the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq*., and all applicable regulations thereunder.

188.    During the full statutory period, G&W was subject to the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq*., and all applicable regulations thereunder.

189.    As set forth above, Plaintiff engaged in protected activities under the ADA by, *inter alia*, asserting claims of disability discrimination via a letter sent through counsel.

190.    By the actions described above, among others, G&W retaliated against Plaintiff for engaging in protected activities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

191.    G&W's unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the ADA.

192.    As a direct and proximate result of G&W's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

193.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: GENDER DISCRIMINATION
### *(Against all Defendants)*

194.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

195.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

196.    During the full statutory period, Defendants were subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

197.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her gender and pregnancy in violation of the NYSHRL by, *inter alia*, subjecting her to a hostile work environment, withholding her earned commissions, reducing her compensation, and terminating her employment.

198.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

199.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

200.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: DISABILITY DISCRIMINATION
### *(Against all Defendants)*

201.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

202.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

203.    During the full statutory period, Defendants were subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

204.    As set forth above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, generalized anxiety disorder.

205.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

206.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

207.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

208.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL: RETALIATION**
***(Against all Defendants)***

209.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

210.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

211.     During the full statutory period, Defendants were subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

212.     As set forth above, Plaintiff engaged in protected activities under the NYSHRL by, *inter alia*, complaining of gender and pregnancy discrimination both verbally and in writing, and asserting claims of gender, pregnancy, and disability discrimination via letter sent through counsel.

213.     By the actions described above, among others, Defendants retaliated against Plaintiff for engaging in protected activities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

214.     Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

215.     As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

216.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE NYCHRL: SEX DISCRIMINATION
*(Against all Defendants)*

217.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

218.     During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

219.    During the full statutory period, Defendants were subject to the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

220.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her sex and pregnancy in violation of the NYCHRL by, *inter alia*, subjecting her to a hostile work environment, withholding her earned commissions, reducing her compensation, and terminating her employment.

221.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

222.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

223.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: DISABILITY DISCRIMINATION
### *(Against all Defendants)*

224.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

225.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

226.    During the full statutory period, Defendants were subject to the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

227.    As set forth above, Defendants were aware that Plaintiff suffered from recognized disabilities, including, *inter alia*, generalized anxiety disorder.

228.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her recognized disabilities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

229.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

230.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

231.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: RETALIATION**
***(Against all Defendants)***

232.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

233.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

234.    During the full statutory period, Defendants were subject to the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

235.    As set forth above, Plaintiff engaged in protected activities under the NYCHRL by, *inter alia*, complaining of sex and pregnancy discrimination both verbally and in writing, and asserting claims of sex, pregnancy, and disability discrimination via letter sent through counsel.

236.    By the actions described above, among others, Defendants retaliated against Plaintiff for engaging in protected activities by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

237.    Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

238.    As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

239.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
### *(Against all Defendants)*

240.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

241.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

242.    During the full statutory period, Defendants were subject to the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

243.    The NYLL requires covered employers, including Defendants, to compensate employees in accordance with their agreed terms of employment.

244.    Plaintiff was not exempt from this requirement and is entitled to be paid by Defendants in accordance with the agreed terms of her employment, including, *inter alia*, the agreed terms regarding payment of commissions.

245.    Specifically, Plaintiff was entitled to be paid non-discretionary commissions based on metrics measuring her personal performance as an Account Executive.

246.    These commissions were to be paid in part at the beginning of each year, with the remainder paid in two installments at predetermined times thereafter.

247.    By the actions described above, among others, Defendants withheld Plaintiff's commissions long after their due date, and continue to withhold at least $27,327.19 in earned commissions.

248.    As a result of Defendants' failure to compensate Plaintiff in accordance with the agreed terms of her employment, Defendants have violated, *inter alia*, NYLL §§ 191, 191-c, and 193, as well as all applicable regulations thereunder.

249.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

250.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

251.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY FINAL WAGES
*(Against all Defendants)*

252.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

253.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

254.    During the full statutory period, Defendants were subject to the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

255.    The NYLL requires covered employers, including Defendants, upon the end of an employee's employment, to pay that employee's final wages no later than the regular pay day for the pay period during which her employment ended.

256.    Plaintiff was not exempt from the requirement that Defendants pay Plaintiff her final wages in full by no later than the regular pay day for the pay period during which her employment ended.

257.    By the actions described above, among others, Defendants withheld Plaintiff's commissions long after their due date, and continue to withhold at least $27,327.19 in earned commissions.

258.    As a result of Defendants' failure to pay Plaintiff her final wages by no later than the regular pay day for the pay period during which her employment ended, Defendants have violated, *inter alia*, NYLL §§ 191 and 191-c, as well as all applicable regulations thereunder.

259.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

260.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

261.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO TIMELY PAY WAGES
### *(Against all Defendants)*

262.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

263.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

264.    During the full statutory period, Defendants were subject to the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

265.    The NYLL requires covered employers, including Defendants, to pay employees in accordance with agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which the commissions are earned.

266.    Plaintiff was not exempt from the requirement that Defendants timely pay her all of her wages owed.

267.    By the actions described above, among others, Defendants failed to pay Plaintiff on her regularly scheduled payday, admittedly withholding her earned commissions well past their due date, and sometimes electing not to pay her at all.

268.    As a result of Defendants' failure to pay Plaintiff commissions on a monthly basis, Defendants have violated, *inter alia*, NYLL § 191 and all applicable regulations thereunder.

269.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

270.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

271.   Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FOURTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: RETALIATION
### *(Against all Defendants)*

272.   Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

273.   During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

274.   During the full statutory period, Defendants were subject to the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

275.   The NYLL prohibits covered employers, including Defendants, from retaliating against current or former employees because they engage in protected activity concerning alleged violations of the NYLL.

276.   Protected activity under NYLL § 215 specifically includes "mak[ing] a complaint to his or her employer . . . that the employer has violated any provision" of the NYLL.

277.   As set forth above, Plaintiff engaged in protected activities under the NYLL by, *inter alia*, complaining to Defendants regarding nonpayment and late payment of her earned commissions, as well as violations of her rights under NYLL § 206-c.

278.   By the actions described above, among others, Defendants retaliated against Plaintiff for engaging in protected activities in violation of NYLL § 215 by, *inter alia*, denying her reasonable accommodations, withholding her earned commissions, reducing her compensation, and terminating her employment.

279.   Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

280.     As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

281.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.     Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for her economic loss;

D.     Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.     Grant Plaintiff an award of damages in an amount to be determined at trial for any and all other monetary and/or non-monetary losses she has suffered;

F.     Grant Plaintiff an award of prejudgment interest where applicable;

G.     Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

H.     Grant Plaintiff an award of liquidated damages in an amount to be determined at trial;

I.     Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

J.      Grant Plaintiff an award of reasonable costs that she has incurred in this action, including, without limitation, expert witness fees;

K.      Grant Plaintiff all other available damages to the greatest extent permitted by law; and

L.      Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: January 8, 2021                                 **FARUQI & FARUQI, LLP**
      New York, New York

                                          By: */s/ Innessa M. Huot*
                                            Innessa M. Huot
                                            Alex J. Hartzband
                                            Camilo M. Burr

                                        685 Third Avenue, 26th Floor
                                        New York, New York 10017
                                        Telephone: 212-983-9330
                                        Facsimile: 212-983-9331
                                        ihuot@faruqilaw.com
                                        ahartzband@faruqilaw.com
                                        cburr@faruqilaw.com

                                        *Attorneys for Plaintiff*