USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
ARIEL ZUCKERMAN,                                         :
                                                         :
                                     Plaintiff,          :
                                                         :
                 -against-                               :            20-CV-8742 (VEC)
                                                         :
GW ACQUISITION LLC D/B/A G&W                             :            OPINION AND ORDER
INDUSTRIES, MICHAEL MARINOFF, IN HIS                     :
INDIVIDUAL AND PROFESSIONAL                              :
CAPACITIES, AND ALBERT MALEH, IN HIS                     :
INDIVIDUAL AND PROFESSIONAL                              :
CAPACITIES,                                              :
                                                         :
                                     Defendants.         :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Plaintiff Ariel Zuckerman sued her former employer, GW Acquisition LLC, and its two

owners, Michael Marinoff and Albert Maleh (collectively "Defendants"), for violations of Title

VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C.

§§ 2000e *et seq.* ("Title VII"), the Americans with Disability Act, 42 U.S.C. §§ 12101 *et seq.*

("ADA"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"),

the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"),

and the New York Labor Law, N.Y. Lab. Law §§ 1 *et seq.* ("NYLL").  Defendants moved to

dismiss the complaint for failure to state a claim.  For the reasons discussed below, Defendants'

motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

In June 2013, Plaintiff began working as an Account Executive at GW Acquisition LLC, a company that manufactures and sells children's apparel. First Amended Complaint ("FAC"), Dkt. 30 ¶ 35. After her first year on the job, Defendants increased Plaintiff's base salary to $75,000 and added commissions. *Id.* ¶¶ 37–41. Plaintiff contends that pursuant to her agreement with Defendants, her commissions were to be paid twice each year. *Id.* ¶¶ 42–46.

In late October 2018, Plaintiff informed Defendants that she was pregnant. *Id.* ¶ 48. Plaintiff alleges that Defendants initially denied her request to take maternity leave but ultimately granted her a three-month maternity leave. *Id.* ¶ 53. She gave birth on April 29, 2019. *Id.* ¶ 61. While she was pregnant and during her maternity leave, Plaintiff alleges that she notified Defendants of her intention to breastfeed her child and of her need for an appropriate place at the office to pump breastmilk during the workday. *Id.* ¶¶ 49–51, 66–69. When she returned to work after her maternity leave, Plaintiff discovered that Defendants had not established an appropriate lactation space; Plaintiff alleges that she "was forced to pump in a cramped and dusty closet." *Id.* ¶ 71. After Plaintiff complained about the lack of suitable accommodations, Defendants allowed her to install a privacy curtain in the office. *Id.* ¶ 78.

Plaintiff also contends that Maleh and Marinoff made a series of offensive comments about her decision to breastfeed and to pump breastmilk at the office. For example, Plaintiff alleges that soon after she returned from maternity leave, Marinoff asked Plaintiff if he could "have some milk in [his] coffee" and whether she could "just squirt it in there." *Id.* ¶¶ 87–88. Plaintiff also claims that Maleh frequently yelled "pump station" or "pumper" when he would pass the designated pumping area in the office. *Id.* ¶¶ 94–97. Plaintiff further alleges that she

---

[1]    The Court accepts all non-conclusory allegations in the First Amended Complaint ("FAC") as true for the purposes of this motion. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

suffers from "generalized anxiety disorder" and that her condition has been "severely exacerbated" by "Defendants' pervasive harassment." *Id.* ¶¶ 104–105.

On March 19, 2020, Plaintiff was furloughed due to the COVID-19 pandemic. *Id.* ¶ 111. She was put back on the payroll in May 2020 and was told that she would have to report back to the office for in-person work on July 6, 2020. *Id.* ¶¶ 115–116. In advance of the return date, Plaintiff requested that she be allowed to work from home for four to six additional months as a reasonable accommodation for her mental health condition. *Id.* ¶¶ 120–121. Plaintiff contends that Defendants initially agreed to allow her to work from home until September 7, 2020, but when they realized that her claimed anxiety was related to their alleged harassment, not to the pandemic, Defendants reneged on their work-from-home agreement. *Id.* ¶¶ 132–136. Defendants ultimately agreed that Plaintiff could work from home through September 7, 2020, but for two-thirds of her salary; Plaintiff alleges that she agreed to that arrangement because she felt she had "no other choice." *Id.* ¶¶ 137–139. Notwithstanding that agreement, Defendants terminated Plaintiff's employment on August 10, 2020. *Id.* ¶ 156.

With respect to commissions, Plaintiff contends that Defendants repeatedly delayed paying her what she was due. Plaintiff alleges that she received commissions based on sales during the first half of 2019 in October and November of that year, three months later than what was agreed to in the terms of her employment. *Id.* ¶¶ 43, 63, 79, 81. She also claims that she received commissions for sales made in the second half of 2019 in June and July 2020, five months later than the allegedly agreed-upon payment date. *Id.* ¶¶ 45, 112–113, 124, 126–128. Plaintiff also alleges that she is owed at least $27,327.19 in commissions that have yet to be paid by Defendants. *Id.* ¶¶ 129–131.

On June 30, 2020, prior to her discharge, Plaintiff, through counsel, claimed that Defendants had discriminated against her based on her pregnancy and her disability. *Id.* ¶ 140.

On July 22, 2020, Plaintiff asked Maleh and Marinoff to put in place "certain safeguards," including a lactation room, prior to her return to work at the office. *Id.* ¶¶ 141–142. On the same day, Plaintiff, through counsel, sent Defendants three recordings: two that included allegedly harassing comments of Marinoff and Maleh, and one that included Maleh's alleged agreement to allow Plaintiff to work from home until September 7, 2020. *Id.* ¶¶ 146, 152. On July 27, 2020, Defendants told Plaintiff that they were unwilling to take the requested actions, and they requested documentation regarding Plaintiff's alleged disability. *Id.* ¶¶ 147–148.

On August 10, 2020, before Plaintiff provided documentation of her alleged disability, Defendants terminated her employment. *Id.* ¶ 156. Defendants claimed that they fired Plaintiff because she had "surreptitiously recorded meetings with G&W's managers and buyers on company premises without the parties' knowledge or consent." *Id.* ¶ 157. Plaintiff alleges that she was wrongfully terminated, as none of the recordings contains discussions of business matters, and that Defendants' proffered reason for her termination was pretext for discrimination. *Id.* ¶¶ 160–162.

The Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue on September 30, 2020, *see* FAC ¶ 18, and Plaintiff commenced this lawsuit on October 20, 2020, *see* Compl., Dkt. 1. On January 8, 2021, Plaintiff amended her complaint. FAC, Dkt. 30. On January 29, 2021, Defendants moved to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Notice of Mot., Dkt. 41. Plaintiff opposed the motion. Resp., Dkt. 47.[2]

---

[2]   Rule 4(B) of the undersigned's Individual Practices in Civil Cases requires that all memoranda of law be double spaced. Plaintiff's brief in opposition to the motion to dismiss used 1.81 spacing and not Microsoft Word's standard double-spacing setting. When proper double spacing is applied, Plaintiff's brief exceeds the page limits set by the Court. *See* Endorsement, Dkt. 40 (extending Plaintiff's response brief page limit to 30 pages).

   To address Plaintiff's failure to comply with the Court's rules and orders, the Court ordered Plaintiff to show cause why its response brief should not be stricken from the record, counsel sanctioned, or both. *See* Order to

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  But even though courts are required to accept all of the factual allegations in the complaint as true, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

Show Cause, Dkt. 69.  In response, Plaintiff's counsel asserted that they had interpreted the Court's double-spacing requirement to allow 24-point spacing (double the required 12-point font) and not that the parties must use Microsoft Word's standard double-spacing setting.  *See* Show Cause Resp., Dkt. 70 at 1–2.  The Court finds it hard to credit that explanation, especially as Plaintiff's counsel have properly double-spaced their filings in many of their other cases in the Southern District of New York.  *See, e.g.*, Mem. of Law, 18-CV-3028, Dkt. 32 (S.D.N.Y. July 27, 2018) (using Microsoft Word's standard double-spacing setting); Resp., 19-CV-972, Dkt. 32 (S.D.N.Y. May 20, 2019) (same); Mem. of Law, 20-CV-2481, Dkt. 44 (S.D.N.Y. Sept. 8, 2020) (same).

Upon due consideration, the Court will not sanction Plaintiff's counsel.  The Court accepts the sincerity of Plaintiff's counsel's apology and its commitment to applying court rules "without exception going forward."  *See* Show Cause Resp. at 1, 3; *see also* Internal Email, Dkt. 70-1 (informing Plaintiff's firm about double-spacing requirements in light of the Court's order).  Moreover, the Court finds that its consideration of sanctions is a sufficient consequence that will — hopefully — ensure that similar misconduct does not reoccur.

**DISCUSSION**

I.    **Defendants' Motion to Dismiss Is Denied as to Plaintiff's Claims of Sex Discrimination**

    A. **Applicable Law**

Pursuant to Title VII, it is unlawful for an employer to discriminate against a person because of the person's sex.  42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination Act amended Title VII to clarify that sex discrimination includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).

Discrimination claims brought pursuant to Title VII are analyzed using "the familiar burden-shifting framework" articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012*)*; *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination."  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (citation omitted); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015).  To establish a *prima facie* case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for the position that she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

To "survive a motion to dismiss, a plaintiff need only establish a *prima facie* case of sex discrimination . . . ." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (cleaned up). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up). The elements of a *prima facie* case are "an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Yan v. Ziba Mode Inc.*, No. 09-CV-3000, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016) (cleaned up).

Accordingly, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. The alleged facts "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* Nonetheless, a complaint is properly dismissed if the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff]." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (internal quotation marks omitted).

### B.  Plaintiff Has Adequately Alleged a *Prima Facie* Case of Sex Discrimination Pursuant to Title VII

Defendants do not dispute that Plaintiff, a breastfeeding mother, has satisfied the first two elements of her *prima facie* case.  Mem. of Law, Dkt. 42 at 14.[3]  For the reasons discussed below, Plaintiff has adequately alleged the remaining two elements: that she suffered adverse employment actions and that such actions occurred under circumstances giving rise to an inference of discriminatory intent.

#### 1.  Plaintiff Has Adequately Alleged that She Suffered Adverse Employment Actions

In states like New York that have local administrative mechanisms for pursuing discrimination claims, Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" each "constitutes a separate actionable 'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Here, Plaintiff filed a charge of discrimination with the EEOC on September 10, 2020.  FAC ¶ 17.  Accordingly, any discrete acts of discrimination that occurred before November 15, 2019, 300 days before her EEOC filing, are time-barred.  Upon careful review of the FAC, Plaintiff has adequately alleged three discrete acts of discrimination that occurred after November 15, 2019: (1) commissions that should have been paid in or about February 2020 were

---

[3]    Defendants state that their motion is directed solely at the inadequacy of the complaint vis-à-vis the fourth element of the *prima facie* case, that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  Mem. of Law, Dkt. 42 at 14.  But Defendants also contest whether certain conduct constituted an adverse employment action, *id.* at 5–6, 14–15, which implicates the third element of the *prima facie* case.  Accordingly, the Court considers whether Plaintiff has adequately alleged both the third and fourth elements of a *prima facie* case.

paid late, *id.* ¶¶ 109, 112–113, 124–128; (2) commissions due when her employment was terminated were not paid, *id.* ¶¶ 129–130;[4] and (3) her employment was terminated on August 10, 2020, *id.* ¶¶ 156–157.  Accordingly, Plaintiff has sufficiently pled the third element of a *prima facie* case, that she suffered adverse employment actions.

### 2.  Plaintiff Has Adequately Alleged Facts from Which the Court Can Infer Discriminatory Intent

Plaintiff has also adequately alleged a claim that the adverse actions occurred under circumstances giving rise to an inference of discriminatory intent.   Plaintiff's allegations regarding numerous offensive comments made by Marinoff and Maleh regarding her decision to breastfeed her child and to pump breastmilk at work are adequate to support an inference of discriminatory intent.  Such comments include that Plaintiff could put a milk company out of business, FAC ¶ 93, that the company is "turning into a regular dairy farm," *id.* ¶ 102, and calling Plaintiff "pumper" in front of others, *id.* ¶¶ 94, 96.[5]  Such comments are more than enough, at this stage of the proceedings, for the Court to infer a discriminatory intent on the part of Defendants.

Defendants do not dispute that Plaintiff has timely raised claims of discrimination based on the failure to pay commissions and the termination of her employment, Mem. of Law at 14, but they argue that most of the offensive comments cannot be considered because they were allegedly made before November 15, 2019, the date marking 300 days before she filed her

---

[4]     Defendants argue that Plaintiff has not adequately alleged that she is owed commissions because she did "not allege with any specificity how [she] arrived at the calculation of the alleged balance owed to her."  Mem. of Law 14.  Although Plaintiff must give the Court "some reason to believe that any damage has occurred at all," she is not required to "calculate damages at the pleading stage."  *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 115 (2d Cir. 2018).  Accordingly, Plaintiff's non-conclusory allegations regarding the terms of the employment agreement with respect to commissions, FAC, Dkt. 30 ¶¶ 38–46, and her detailed allegations that she is still owed commissions, *id.* ¶¶ 47, 129, 131, are sufficient at this stage of the proceedings.

[5]     For a full list of comments, see FAC ¶¶ 51, 68, 78, 83, 84, 87, 88, 89–90, 93, 94–98, 102–103; *see also* Resp., Dkt. 47 at 14–15 (listing the 23 comments found in the FAC).

EEOC charge, and are therefore time-barred.  Mem. of Law at 6, 14, 15.  But for purposes of Plaintiff's claim of sex discrimination,[6] Plaintiff is not arguing that the temporally distant comments are discrete acts of discrimination; rather, Plaintiff is arguing that the comments serve as "background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.  *See also Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (considering acts that fall outside the limitations period as relevant background evidence to support timely claims).  The Court agrees that the more historical comments are evidence that the adverse actions occurred under circumstances giving rise to an inference of discriminatory intent.

Defendants further argue that the alleged offensive comments were "merely 'stray remarks,'" which "generally 'do not constitute sufficient evidence to support a case of employment discrimination.'"  Mem. of Law at 15 (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).[7]  Courts consider four factors, none of which is dispositive, to determine whether a comment is a stray remark or is probative of discrimination: "(1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010).

---

[6]     The Court discusses Plaintiff's hostile work environment claim in the next section.

[7]     Plaintiff argues that considering whether comments are stray remarks is "inappropriate at the pleading stage."  Resp. at 15.  But "[c]ourts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim."  *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019) (collecting employment discrimination decisions granting motions to dismiss on the basis that a plaintiff's claims were predicated on stray remarks).

Plaintiff has adequately alleged that the comments at issue are probative of discriminatory intent and were not mere stray remarks.  With respect to the first factor, Plaintiff contends that all of the remarks were made by Marinoff and Maleh, the two men who own the company and who supervised Plaintiff.  *See* FAC ¶¶ 27, 32.  With respect to the third factor, although Defendants begrudgingly concede that the comments were "arguably offensive," *see* Mem. of Law at 16, the Court has no doubt that, as alleged, a reasonable juror would view the remarks as exceedingly juvenile, obviously offensive, and evidence of discriminatory intent.

Additionally, as alleged, many of the remarks were temporally proximate to the alleged adverse actions.  With respect to commissions, Plaintiff contends that commissions that should have been paid in or around February 2020 were delayed by five months.  FAC ¶¶ 45, 112–113, 124, 126–128.  Plaintiff also alleges that many of Defendants' comments were made around February 2020.  For example, Plaintiff claims that "in or around January 2020, Marinoff joked to Plaintiff's colleagues and G&W buyers that Plaintiff produced so much breast milk that she could single handedly put the Borden Milk Company out of business." *Id.* ¶ 93.  Additionally, Plaintiff alleges that when she left a February 2020 meeting to pump, Marinoff walked past the designated pumping area and yelled, "Hey pumper, are you done?" *Id.* ¶ 96.  *See also id.* ¶¶ 99, 102 (alleging that in March 2020, Marinoff turned to a group of women employees, including Plaintiff, and commented that the company was "turning into a regular dairy farm").

With respect to Plaintiff's August 2020 termination, Defendants are correct that the last alleged offensive comment was made in March 2020, five months before Plaintiff was terminated.  Mem. of Law at 16.  But in evaluating temporal proximity, courts must consider whether there is "any aspect of the facts alleged which could explain such a delay." *Hurd v. N.Y. Health & Hosps. Corp.*, No. 04-CV-998, 2007 WL 678403, at *6 (S.D.N.Y. Mar. 5, 2007), *aff'd sub nom. Hurd v. N.Y.C. Health & Hosps. Corp.*, No. 07-CV-1250, 2008 WL 5120624 (2d Cir.

Dec. 8, 2008).  Here, the COVID-19 pandemic could explain the respite in comments.  Plaintiff alleges that Defendants made the offensive comments up until she was furloughed in March 2020 and that she was only placed back on the payroll in May.  FAC ¶¶ 109, 111, 115.  From May through the date she was terminated, Plaintiff worked from home, which meant that she was no longer pumping at the office.  Accordingly, the lull in comments could be explained by the change in circumstances brought about by the pandemic, as opposed to a change of attitude by Defendants.

Although Plaintiff does not allege that the comments were made in the context of the Defendants taking adverse employment actions against her, the circumstances of the adverse actions further support an inference of discriminatory intent.  With respect to the delayed payment of commissions that were due in February, Plaintiff alleges that in a single conversation, Plaintiff complained that Defendants' harassment based on her pumping at the office was exacerbating her anxiety, *see* FAC ¶ 133, and Defendants told Plaintiff that they intended to continue to withhold the commissions that had been due in February, *id.* ¶ 138.  Additionally, Plaintiff alleges that she was terminated soon after she requested that safeguards be put in place to address the alleged harassment.  *Id.* ¶¶ 141, 147, 152, 156.  In short, both the alleged litany of offensive comments and the circumstances surrounding the adverse employment actions support an inference of discriminatory intent on the part of Defendants.

Because Plaintiff has adequately alleged a *prima facie* case of sex discrimination pursuant to Title VII, Defendants' motion to dismiss that claim is denied.

### C. Plaintiff Has Adequately Alleged Sex Discrimination Claims Pursuant to NYSHRL and NYCHRL

Plaintiff has also adequately alleged sex discrimination claims under the NYSHRL and NYCHRL.[8]  While NYSHRL discrimination claims are reviewed according to the same standards as Title VII discrimination claims, *see Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n. 2 (2d Cir. 2010), NYCHRL claims are reviewed "more liberally" than their federal and state counterparts, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  Accordingly, because Plaintiff has stated a Title VII claim, she has necessarily stated sex discrimination claims pursuant to NYSHRL and NYCHRL.[9]  Defendants' motion to dismiss those claims is therefore denied.

## II. Defendants' Motion to Dismiss Is Denied as to Plaintiff's Hostile Work Environment Claims

Plaintiff also alleges that Defendants created a hostile work environment in violation of Title VII, NYSHRL, and NYCHRL.  FAC ¶¶ 166, 197, 220.  To state a claim for hostile work environment pursuant to Title VII, a plaintiff must plead facts that would allow the Court to infer that the complained of conduct: (1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that was subjectively perceived by the plaintiff as hostile or abusive; and (3) created such an

---

[8]    Although pregnancy discrimination is not expressly mentioned in NYSHRL or NYCHRL, it is actionable under those statutes as a type of sex discrimination.  *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012) (collecting cases); s*ee also Ivanov v. Builderdome, Inc.*, No. 19-CV-3422 (LJL), 2021 WL 2554620, at *15 (S.D.N.Y. June 22, 2021) ("Though neither the NYSHRL nor the NYCHRL explicitly names pregnancy as a type of actionable discrimination, courts have deemed pregnancy discrimination actionable under both laws." (citation omitted)).

[9]    Unlike Title VII, which excludes discrete discriminatory acts that occurred more than 300 days before the filing of an EEOC charge, NYSHRL and NYCHRL each has a three-year statute of limitations period.  *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016); *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 292 (E.D.N.Y. 2013).  Because Plaintiff has stated a claim pursuant to NYSHRL and NYCHRL as to alleged adverse employment actions that occurred within 300 days of the EEOC filing, the Court need not consider whether Plaintiff has also stated a claim with respect to allegedly earlier occurring adverse actions.

environment because of the plaintiff's sex. *Patane*, 508 F.3d at 113; *see also Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). "[T]o avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse . . . .'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). The Second Circuit has "repeatedly cautioned against setting the bar too high." *Id.*

As discussed above, for purposes of Plaintiff's Title VII claim, the Court may only consider alleged "unlawful employment practices" that occurred after November 15, 2019. *See Vega*, 801 F.3d at 78–79. Hostile work environment claims are different than discrete acts of discrimination, however, because a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. Accordingly, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. *See also Petrosino*, 385 F.3d at 220 ("[I]n the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider the entire time period of the hostile environment in determining liability." (cleaned up)).

Here, Plaintiff has adequately alleged that offensive remarks about breastfeeding and pumping, which contributed to the hostile environment, occurred after November 15, 2019. Because those acts occurred within the time limit, the Court may consider earlier acts which form part of the same hostile work environment claim. *See Morgan*, 536 U.S. at 120.

Accordingly, to assess Plaintiff's hostile work environment claims, the Court considers each of the allegedly discriminatory acts in the FAC that relate to breastfeeding and pumping.[10]

The Court finds that Plaintiff has pled sufficient facts to indicate that the three elements of a hostile work environment claim have been met.  The many comments that Plaintiff alleges Defendants made are enough on their own to support a finding that a reasonable person could deem the environment hostile or abusive.  The comments were "more than episodic" and were "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (cleaned up).  Plaintiff has also pled adequately that she subjectively perceived the comments as hostile or abusive.  *See, e.g.*, FAC ¶¶ 92, 105, 120, 133.

Additionally, Plaintiff has adequately alleged that the hostile work environment was created because of Plaintiff's decision to pump at work.  Defendants' alleged comments are all facially related to her protected status, which differentiates Plaintiff's case from many others where the lack of connection warranted the dismissal of the alleged hostile work environment claims.  *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (no hostile work environment when supervisor made negative statements about plaintiff, was impatient and used a harsh tone of voice, refused to meet with plaintiff, replaced plaintiff at meetings, wrongly reprimanded plaintiff, increased plaintiff's workload, and made sarcastic comments); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment when "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").  Here, all of the purportedly offensive comments were directly related to

---

[10]     Plaintiff alleged that Defendants initially refused to allow her to take her full maternity leave and that they pressured her to return early from her maternity leave.  *See* FAC, Dkt. 30 ¶¶ 52–59, 62–65.  The Court finds that those acts are sufficiently different from her lactation-related claims as to not form "part of the same actionable hostile work environment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002).  Because those acts occurred outside the 300-day limitations period, the Court does not consider them.

Plaintiff's choice to breastfeed and to pump at the office.  Accordingly, Plaintiff has pled that the hostile environment was created because of her sex.  In short, Plaintiff has stated a hostile work environment claim pursuant to Title VII.

Hostile work environment claims under Title VII and the NYSHRL are governed by the same standards of liability.  *Summa v. Hofstra*, 708 F.3d 115, 123–24 (2d Cir. 2013). Accordingly, because Plaintiff has stated a hostile work environment claim under Title VII, she has necessarily stated a claim under NYSHRL.  Under the NYCHRL, unlike under Title VII and the NYSHRL, there is no distinction between a claim premised on the creation of a hostile work environment and one premised on unlawful discrimination: the former is subsumed into the latter, and a plaintiff need only prove that "she has been treated less well than other employees because of a protected trait." *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Sotomayor v. N.Y.C.*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims." (internal citation omitted)).  Here, with respect to NYCHRL, Plaintiff's hostile work environment claim reinforces her discrimination claim.  Because she has adequately alleged that she was treated less well than others because of her choice to breastfeed and to pump, she has stated a claim for discrimination pursuant to the NYCHRL.

For all of these reasons, Defendants' motion to dismiss Plaintiff's hostile work environment claims is denied.

### III.    Defendants' Motion to Dismiss Is Granted as to Plaintiff's Disability Claims

#### A.  Applicable Law

Plaintiff also alleges that Defendants discriminated against her based on her mental health disability and that they failed to accommodate that disability in violation of the ADA, NYSHRL,

16

and NYCHRL.  FAC ¶¶ 178–185; 201–208; 224–231.  Like Title VII discrimination claims,

disability discrimination and failure to accommodate claims are analyzed using the burden-

shifting framework articulated in *McDonnell Douglas*.  *See McMillan v. City of New York*, 711

F.3d 120, 125 (2d Cir. 2013).  And, like discrimination claims, to state a claim for disability

discrimination or failure to accommodate, a plaintiff need only plead facts necessary to establish

a *prima facie* case.  *See Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL

3403191, at *5 (E.D.N.Y. June 19, 2020) (disability discrimination); *Limauro v. Consol. Edison

Co. of New York, Inc.*, No. 20-CV-03558, 2021 WL 466952, at *7 (S.D.N.Y. Feb. 9, 2021)

(failure to accommodate).[11]

　　　　To allege a *prima facie* case of disability discrimination, "a plaintiff must allege that: (1)

the defendant is covered by the [applicable statute]; (2) plaintiff suffers from or is regarded as

suffering from a disability within the meaning of the [statute]; (3) plaintiff was qualified to

perform the essential functions of the job, with or without reasonable accommodation; and (4)

plaintiff suffered an adverse employment action because of [plaintiff's] disability or perceived

disability."  *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (cleaned up) (ADA

---

[11]　　　Defendants argue that in the ADA context, the *McDonnell Douglas* burden-shifting framework "although largely developed in the context of the summary judgment stage, applies with equal force to motions to dismiss." Mem. of Law at 7.  Any implication that a plaintiff must establish her claims pursuant to the *McDonnell Douglas* framework at the motion to dismiss stage is wrong as a matter of law.  To support their proposition, Defendants cite *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, which noted that *McDonnell Douglas* provides the overarching framework for ADA discrimination claims.  Mem. of Law at 7 (citing *O'Hara v. Bd. of Coop. Servs., S. Westchester*, No. 18-CV-8502, 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020)).  But the *O'Hara* court also recognized that at the motion to dismiss stage, plaintiff has a "reduced pleading burden."  *O'Hara*, 2020 WL 1244474, at *12.  Defendants' reliance on *Dooley v. JetBlue Airways Corp.* is similarly misplaced.  *See* Mem. of Law at 7 (citing *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015)).  In that case, the Second Circuit recognized that the burden at the motion to dismiss stage in ADA discrimination claims is much less than what is required at summary judgment or trial.  *See Dooley*, 636 F. App'x at 21 (finding that a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage" (internal citation omitted)).  Accordingly, the Court considers only whether Plaintiff has adequately pled a *prima facie* case; the remaining steps in the *McDonnell Douglas* test are appropriately left to later stages of the proceedings.

claims); *see also Kendall v. Fisse*, 149 F. App'x 19, 21 (2d Cir. 2005) (applying the same

standard to NYSHRL and NYCHRL disability discrimination claims).

To allege a *prima facie* case of failure to accommodate a disability, a plaintiff must allege

that (1) plaintiff is a person with a disability within the meaning of the relevant statute; (2)

plaintiff's employer is covered by the statute and had notice of the plaintiff's disability; (3) with

reasonable accommodation, plaintiff could perform the essential functions of the job; and (4) the

employer refused to make such accommodations.  *Tse v. New York Univ.*, No. 10-CV-7207, 2013

WL 5288848, at *10 (S.D.N.Y. Sept. 19, 2013) (finding that the same standard applies to ADA,

NYSHRL, and NYCHRL claims).  There is some overlap among the elements of the two types

of claims; first and foremost, both require the plaintiff to allege adequately that she has a

qualifying disability under the applicable statute.

### B.  Plaintiff Has Not Adequately Alleged that She Suffers from a Disability Within the Meaning of the ADA

Defendants' motion to dismiss Plaintiff's ADA disability discrimination and failure to

accommodate claims is granted because she has not adequately pled that she suffers from a

disability within the meaning of the ADA.  To plead an ADA-qualifying mental disability, a

plaintiff must allege that: (1) she suffers from mental impairment; (2) the mental impairment

affects a major life activity; and (3) the impairment substantially limits the major life activity.

*See Potter v. Xerox Corp.*, 1 F. App'x 34, 36–37 (2d Cir. 2001) (citing *Bartlett v. New York State

Bd. of Law Exam'rs*, 226 F.3d 69, 79 (2d Cir. 2000)); *see also* 42 U.S.C. § 12102(1)(A) (defining

disability as "a physical or mental impairment that substantially limits one or more major life

activities of [an] individual").

The EEOC has promulgated regulations that expand upon the ADA's definition of a

"disability."  With respect to a mental impairment, EEOC regulations make clear that "[a]ny

18

mental or psychological disorder," including an "emotional or mental illness," qualifies as a covered impairment.  *See* 29 C.F.R. § 1630.2(h)(2).  Here, Plaintiff alleges that she suffers from "generalized anxiety disorder."  FAC ¶ 104.  Accordingly, Plaintiff has adequately pled the first element of an ADA-qualifying disability: she suffers from an impairment.

At issue is whether Plaintiff has adequately pled that her impairment substantially limits a major life activity.  The EEOC has explained that major life activities include, but are not limited to, "[c]aring for oneself, performing manual tasks, . . . sleeping, . . . concentrating, thinking, communicating, interacting with others, and working."  29 C.F.R. § 1630.2(i)(1)(i). Additionally, EEOC regulations note that an impairment "is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff alleges that she was diagnosed with "generalized anxiety disorder" in 2011 and that she has continued to receive psychiatric treatment since then for her condition.  *See* FAC ¶¶ 104, 117–118.  But a diagnosis, standing alone, establishes only that Plaintiff has an impairment; it does not establish that any major life activity is limited by that impairment.  The EEOC gives some weight to certain mental health diagnoses, which likely qualify as disabilities under the ADA because they will "virtually always be found to impose a substantial limitation on a major life activity."  *See* 29 C.F.R. § 1630.2(j)(3)(ii).  For example, EEOC regulations note that "major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function," and likely qualify as disabilities under the ADA.  *See* 29 C.F. R. § 1630.2(j)(3)(iii).  *See also Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *7 (E.D.N.Y. June 19, 2020) (finding that a plaintiff had plausibly pled that his bipolar disorder, which required him to be hospitalized three times, qualified as a disability under the ADA).  Plaintiff's alleged mental health condition,

19

generalized anxiety disorder, is not on the list of EEOC conditions likely to qualify as a disability by its very nature.  Accordingly, allegations that Plaintiff has been diagnosed with the condition, without more, are insufficient to plead that Plaintiff suffered from an ADA-qualifying disability.

In addition to her diagnosis, Plaintiff also asserts that her anxiety "substantially interferes with her ability to sleep, concentrate, think, and interact with others," *see* FAC ¶ 104, and that Defendants' "pervasive harassment severely exacerbated Plaintiff's anxiety and the substantial limitations on Plaintiff's major life functions associated therewith," *id.* ¶ 105.  Plaintiff's allegations in those two paragraphs are conclusory.[12]  Paragraph 104 is a formulaic recitation of a few major life activities taken from EEOC's list.  *Compare* FAC ¶ 104 *with* 29 C.F.R. § 1630.2(i)(1)(i); *see also Cain v. Mandl Coll. Of Allied Health*, No. 14-CV-1729, 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) (finding that Plaintiff's allegations "merely track the language of the statute" and that "[v]ague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient" on a motion to dismiss).  Paragraph 105 simply states that Defendants' actions made her impairment worse; it does not add any factual allegations to support the conclusion that her impairment substantially limited major life activities.  *See Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2020 WL 2489774, at *11 (E.D.N.Y. May 14, 2020) (holding that Plaintiff failed to plead that his condition substantially limited major life activities because his "numerous conclusory statements regarding his disability do not expand on how the disability affects . . . major life activities").  Accordingly, the allegations in paragraphs 104 and 105 do not adequately allege that Plaintiff suffered from a disability within the meaning of the ADA.

---

[12]     Although "a complaint does not need to contain detailed or elaborate factual allegations," *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff also alleges "[b]y way of example only, [that] from the disclosure of her pregnancy through her termination, Plaintiff suffered from increased difficulty sleeping and concentrating as a result of Defendants' harassment." FAC ¶ 106.  But that allegation also fails to state a claim because she includes no facts from which the Court can infer the frequency, duration, or severity of her difficulties sleeping and concentrating.  Because difficulties with sleep and concentration are widespread, for the Court to infer that there is a substantial limitation of those major life activities, Plaintiff must allege facts from which the Court can infer that her difficulties were substantial "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).  Plaintiff alleges no facts from which the Court can deduce whether, and, if so, to what extent, Plaintiff's anxiety limits her ability to sleep and to concentrate as compared to others in the general population.[13]  "Conclusory statements regarding sleep difficulties are . . . insufficient to adequately allege a substantial limitation."  *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 393–94 (E.D.N.Y. 2016) (collecting cases where sleep-related claims were dismissed because the plaintiffs had only made bare allegations that their conditions limited their ability to sleep).  The same reasoning holds true for concentration; bare and vague allegations that a plaintiff has trouble concentrating are insufficient to allege a substantial impairment of a major life activity.  Accordingly, the allegations in paragraph 106 are insufficient to plead a qualifying disability within the meaning of the ADA.

---

[13]    To qualify as a disability under the ADA, the impairment — and not some other cause — must substantially limit the major life activity in question.  Plaintiff has not alleged facts from which the Court can plausibly infer that it was her anxiety that limited her ability to sleep and concentrate.  That absence is particularly problematic in this case where there are plausible alternative explanations — like being pregnant or the parent of a new baby — that could easily explain difficulties sleeping and concentrating.  *See* Mem. of Law at 9.  Plaintiff contends that such arguments are more appropriate at later stages of the proceeding.  *See* Resp. at 7 (citing *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (finding that a court's task on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence . . . ." (internal citation omitted)).  Because the Court has concluded that Plaintiff has not adequately pled that her ability to sleep and concentrate were substantially limited, the Court declines to reach the question of whether the cause of her purported sleep and concentration problems was her alleged disability or something else.

The last pertinent allegation in the FAC is that Plaintiff "became even more anxious interacting with her colleagues, limiting [interactions] to the extent practicable, as Defendants had made a spectacle of her before the entire office based on her decision to breast feed." FAC ¶ 107. The Court construes that allegation as intended support for Plaintiff's contention that her anxiety substantially limits her ability to "interact with others." *Id.* ¶ 104 (naming Plaintiff's ability "to sleep, concentrate, think, and interact with others" as the major life activities affected by her anxiety). As an initial matter, here too, Plaintiff has failed to plead that her ability to interact with others is any more limited than that of the general population.[14] More specifically, though, Plaintiff has not pled that her anxiety has created a sufficiently significant impediment to her ability to interact with others to constitute a disability within the meaning of the ADA. The Second Circuit has explained that a person's ability to interact with others is substantially limited within the meaning of the ADA when the person's "impairment severely limits [his] ability to connect with others, *i.e.*, to initiate contact with other people and respond to them, or to go among other people — the most basic level of these activities." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 203 (2d Cir. 2004).[15] Plaintiff alleges that she purposefully avoided interactions at work, not that she was unable to initiate contact or respond to others. Additionally, Plaintiff's allegations are entirely limited to the work setting; she does not allege that her anxiety impeded her ability to interact with others more generally, including outside the office. Accordingly,

---

[14] The Court takes judicial notice of the fact that many employees are anxious when interacting with their bosses and that many people find certain social settings to be stressful and awkward.

[15] The Court recognizes that *Jacques v. DiMarzio, Inc.* involved an appeal from a judgment following a jury trial, which required the plaintiff to meet a more stringent burden of proof than simply plausibly alleging a cause of action. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 195 (2d Cir. 2004). But *Jacques* is still helpful because it discusses what constitutes a substantial limitation on a plaintiff's ability to interact with others; the Court has applied the liberal pleading standard to that analysis.

Plaintiff has not adequately alleged that her anxiety substantially limited her ability to interact with others.

Because Plaintiff has not adequately pled that her generalized anxiety disorder substantially limited any major life activity, she has not plausibly alleged that she suffered from a disability within the meaning of the ADA, a necessary element of the claim.[16]  Accordingly, Defendants' motion to dismiss Plaintiff's ADA claims for disability discrimination and for failure to accommodate is granted.[17]

_____

[16]     With respect to her failure to accommodate claim, even if Plaintiff had adequately alleged that she suffered from an ADA-qualifying disability, the Court questions whether she adequately alleged that she could perform the essential functions of the job at issue with a reasonable accommodation.  *Limauro v. Consol. Edison Co. of New York, Inc.*, No. 20-CV-3558, 2021 WL 466952, at *7 (S.D.N.Y. Feb. 9, 2021).  There is no doubt that Plaintiff was initially qualified for her position.  Plaintiff alleges that she worked for Defendants for seven years, *id.* ¶ 36, and that for years she had performed her duties "admirably and successfully," *id.* ¶ 108.  "Courts have consistently held that a plaintiff's ability to hold a job for an extended period of time raises the inference that he was qualified for the job." *Limauro*, 2021 WL 466952, at *6.

     But Plaintiff alleges no facts to support the conclusion that she continued to be qualified after her generalized anxiety disorder was purportedly "exacerbated" by "Defendants' pervasive harassment." FAC ¶ 108; *see also id.* ¶¶ 6, 117, 118, 133.  Plaintiff's proposed reasonable accommodation was that she be allowed to work from home for four to six months.  *Id.* ¶ 121.  Plaintiff claims that she "would be able to perform the essential functions of her job with this proposed reasonable accommodation, as she was capable of carrying out her job duties remotely."  *Id.* ¶ 122.  But that allegation is conclusory; she provides no facts to support the contention that she could, in fact, carry out her essential job functions from home.  *See Madonia v. S 37 Mgmt., Inc.*, No. 14-CV-628, 2014 WL 4057430, at *2 (N.D. Ill. Aug. 14, 2014) (dismissing a complaint because it had "no specific allegation that [plaintiff] would have been able to perform the essential functions of her job" with "the four-day week accommodation").

     Plaintiff's argument that her work from home proposal was reasonable because "Defendants afforded her the precise accommodation she requested before rescinding it," *see* Resp. at 9, is not persuasive.  Plaintiff, like millions of other employees, was initially allowed to work from home because of the COVID-19 pandemic; Plaintiff alleges no facts from which the Court could infer that she could perform the essential functions of her job from home after her colleagues and other work contacts returned to their offices.  *See* FAC ¶¶ 6, 109–110, 135, 137.  Even given the liberal pleading standard, and even viewing the facts in the light most favorable to Plaintiff, Plaintiff has not adequately alleged the elements of a failure to accommodate claim.

[17]     The Court considers Plaintiff's claim of retaliation pursuant to the ADA in section V below.

### C.  The Court Denies Plaintiff Leave to Amend Her ADA Claims

Plaintiff requests leave to amend her pleading "in the event that the Court dismisses some or all of Plaintiff's claims."  Resp. at 30.[18]  But a "plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [her] complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Plaintiff has given no indication what allegations she would add to her pleadings or how they would overcome the obvious deficiencies in the FAC.

Additionally, Plaintiff has already had the opportunity to amend her pleadings once in response to Defendant's first motion to dismiss.  *See* Letter, Dkt. 29; FAC, Dkt. 30.  In its initial memorandum of law, Defendants previewed many of their arguments regarding the shortcomings of the allegations in the complaint vis-à-vis whether Plaintiff is disabled within the meaning of the ADA.  *See* Orig. Mem. of Law, Dkt. 27 at 15–18.  Because Plaintiff already has had the opportunity to amend on just those issues and because the arguments made in response to the current motion to dismiss give no indication that the FAC's defects are curable, Plaintiff is denied leave to amend her ADA discrimination and failure to accommodate claims, and those claims are dismissed with prejudice.

### D.  The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Disability-Related Claims Brought Pursuant to NYSHRL and NYCHRL

NYSHRL and NYCHRL define disability more broadly than the ADA.  Plaintiff may well have adequately stated causes of action for disability discrimination and failure to

---

[18]     In support of her request for leave to amend the complaint, Plaintiff cites *Williams v. Citigroup Inc.*, for the proposition that courts should not dismiss claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects of those claims."  *See* Resp. at 30 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)).  Although it has no bearing on the Court's decision to deny leave to amend, the Court notes that the *Williams* decision is devoid of such a holding and does not contain the phrases "the benefit of a ruling" or "precise defects of those claims."  The Court encourages Plaintiff's counsel to refrain from misquoting caselaw.

accommodate under NYSHRL and NYCHRL.  Be that as it may, the Court declines to exercise supplemental jurisdiction over those claims.

A federal court may exercise supplemental jurisdiction over state law claims only if they are so related to a claim over which the Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Disputes are part of the same case or controversy if they "derive from a common nucleus of operative fact."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation omitted).

Here, the Court has dismissed Plaintiff's ADA discrimination and failure to accommodate claims without leave to amend.  Plaintiff's NYSHRL and NYCHRL disability-related claims do not have a common nucleus of operative fact with Plaintiff's remaining federal claims.  The NYSHRL and NYCHRL disability-related claims require considering, *inter alia*, whether Plaintiff has a disability; whether she suffered adverse employment actions because of the disability; whether she was qualified for her position with or without a reasonable accommodation; whether Plaintiff's proposed accommodation was reasonable; and whether Defendants refused to make reasonable accommodations.  The operative facts that the Court would have to consider in making those determinations are unique to the disability context and do not overlap with Plaintiff's Title VII claims, which are the only remaining federal claims in this action.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and municipal disability claims, and they are dismissed without prejudice.

## IV.   Defendants' Motion to Dismiss Is Granted in Part and Denied in Part as to Plaintiff's New York Labor Law Claims

Plaintiff brings three causes of action pursuant to NYLL §§ 191(1)(c), 191(3), 193, and 191-c: failure to pay all wages owed; failure to pay final wages; and failure to timely pay wages.

*See* FAC ¶¶ 240–281.  Instead of analyzing Plaintiff's claims by cause of action,[19] the Court

considers Plaintiff's claims pursuant to each statutory provision.[20]

### A. Defendants' Motion to Dismiss Plaintiff's Claims Brought Pursuant to NYLL § 191(1)(c) Is Denied

Section 191(1)(c) of New York Labor Law provides in relevant part:

> A commission salesperson shall be paid the . . . commissions . . . earned or
> payable in accordance with the agreed terms of employment, . . . if
> monthly or more frequent payment of wages, salary, . . . or commissions
> are substantial, then additional compensation earned . . . may be paid less
> frequently than once in each month, but in no event later than the time
> provided in the employment agreement or compensation plan.

NYLL § 191(1)(c).  Plaintiff argues that Defendants violated this provision in two ways: by

failing to pay her the full amount of commissions owed, FAC ¶ 248, and by failing to pay her in

a timely manner, *id.* ¶¶ 258, 268.

Defendants contend that the provision does not apply to Plaintiff because she has not

alleged adequately that she is a commissioned salesperson as defined by NYLL.  Mem. of Law at

26.  NYLL defines a "commission salesperson" as "any employee whose principal activity is the

selling of any goods, wares, [or] merchandise . . . and whose earnings are based in whole or in

part on commissions."  NYLL § 190(6).  Plaintiff has pled adequately that she qualifies as a

---

[19]     Defendants contend that count 11, failure to pay all wages owed, and count 12, failure to pay final wages,
should be dismissed because they are duplicative.  *See* Mem. of Law at 26–27 (noting that under both claims,
Plaintiff seeks to recover $27,327.19 in unpaid commissions).  But a plaintiff is entitled to plead in the alternative.
*See DirecTV, Inc. v. Meinhart*, 158 F. App'x 309, 311 (2d Cir. 2005); *Int'l Elecs., Inc. v. Media Syndication Global,
Inc.*, No. 02-CV-4274, 2002 WL 1897661, at *1 (S.D.N.Y. Aug. 17, 2002).  And, as Plaintiff acknowledges, she is
not seeking to recover duplicative damages.  Resp. at 28.  Were this case to proceed to trial, any risk of duplicative
damages would be cured by an appropriate instruction to the jury.  *Id.* (quoting *Malmsteen v. Cleopatra Records,
Inc.*, No. 09-CV-9056, 2011 WL 13340070, at *10 (S.D.N.Y. Mar. 21, 2011)).

[20]     The Court has supplemental jurisdiction over Plaintiff's New York Labor Law claims.  Plaintiff alleges that
she was not paid the commissions she was owed in a timely manner and that Defendants still owe her some of her
commissions, in violation of NYLL.  The purported delay in payment and the failure to pay commissions are also
alleged as adverse employment actions as part of Plaintiff's sex discrimination claims.  Accordingly, Plaintiff's state
law labor claims have a common nucleus of operative fact with Plaintiff's Title VII claims.  *See* 28 U.S.C. §
1367(a).

commission salesperson.  She alleges that she was an "Account Executive," and that her job
description included building new accounts and improving relationships with existing vendors.
FAC ¶¶ 35–36.  When viewed in the light most favorable to Plaintiff, the Court finds that
Plaintiff has nudged her claim that she is a "commission salesperson" from the conceivable to
the plausible.

   With respect to Defendants' alleged failure to pay Plaintiff her full commissions, a
section 191(1)(c) claim hinges on whether Plaintiff is owed commissions "earned . . . in
accordance with the agreed terms of employment."  NYLL § 191(1)(c).  Accordingly, a claim
under section 191(1)(c) "rises and falls with plaintiff's claim for breach of contract, and [any]
failure to establish a contractual right to wages necessarily precludes a statutory claim under
New York's labor law."  *Williams v. Preeminent Protective Servs.*, Inc., No. 14-CV-5333, 2017
WL 1592556, at *4 (E.D.N.Y. Apr. 28, 2017) (cleaned up); *see also Holick v. Cellular Sales of
New York, LLC*, No. 12-CV-584, 2019 WL 3253941, at *6 (N.D.N.Y. July 19, 2019) ("Indeed,
courts applying Section 191 focus on a strict application of contractual rights as they apply to a
party's claim for unpaid wages." (collecting cases)).  Defendants argue that Plaintiff has not pled
specific facts from which the Court can infer the terms of the agreement.  *See* Mem. of Law at
25–26.  The Court disagrees.  Plaintiff has alleged the specific terms of her employment, the
commission structure, and the formula for calculating her commission.  *See* FAC ¶¶ 39–46
(alleging that commissions were calculated based on percentages tied to particular gross profit
margins, defining when commissions are considered earned, and describing other aspects of the

commissions formula).  Accordingly, Plaintiff has stated a claim for unpaid wages pursuant to NYLL § 191(1)(c).[21]

Plaintiff has also stated a claim that Defendants have failed to pay Plaintiff in a timely manner in violation of NYLL § 191(1)(c).  Section 191(1)(c) provides that if the salary or commissions of a commission salesperson are "substantial," then commissions may be paid less frequently than once a month but "in no event later than the time provide in the employment agreement."  NYLL § 191(1)(c).  The parties agree that Plaintiff's pay was "substantial" within the meaning of the statute.  *See* Mem. of Law at 27–28; Resp. at 27–28.[22]  Plaintiff has adequately stated a claim that she was not paid commissions in accordance with the terms of her employment.  Plaintiff alleges that Defendants were obligated to pay Plaintiff "in or around August" for commissions earned during the first half of the year, FAC ¶ 43, and "in or around February" of the following year for commissions earned during the second half of a year, *id.* ¶ 45.  She then alleges that she received commissions for work completed in the first half of 2019 in October and November of that year, two or three months after they were due, *id.* ¶¶ 63, 79, 81, and received commissions for work completed in the second half of 2019 in June and July 2020, three to five months after they were due, *id.* ¶¶ 112–113, 124, 126–128.[23]  Accordingly, when

---

[21]  Defendants further argue that Plaintiff has not pled facts to establish that the amount of unpaid commission is $27,327.19 — the amount referenced in the complaint.  *See* Mem. of Law at 25–26.  But as discussed above, *see* note 4 *supra*, Plaintiff is not required to plead the exact amount of damages or how that amount was determined.

[22]  Plaintiff alleges in the FAC that Defendants violated NYLL when they failed to pay Plaintiff her commissions on a monthly basis.  *See* FAC ¶¶ 265, 268.  But Plaintiff appears to have abandoned those claims in her response to the motion to dismiss.  *See* Resp. at 27–28 (admitting that Plaintiff's commissions were substantial and contending that Defendants failed to pay Plaintiff within the timeline purportedly agreed upon by the parties).  To the extent that Plaintiff is alleging that Defendants violated NYLL by not paying commissions on a monthly basis, Defendants' motion to dismiss that portion of her claim is granted.

[23]  According to the Plaintiff, commissions were due "in or around" August and February.  That leaves room for argument about what the actual agreement was (*i.e.*, is October "around" August?).  The Court presumes that there are either writings or a course of dealing that will clarify with better precision the exact parameters of the agreement.  For purposes of a motion to dismiss, however, the allegations are sufficient.

viewed in the light most favorable to Plaintiff, she had alleged adequately that Defendants failed to pay her in a timely manner in violation of NYLL § 191(1)(c).

Because Plaintiff has stated claims for relief pursuant to NYLL § 191(1)(c), Defendants' motion to dismiss claims brought pursuant to that provision is denied.

### B.  Defendants' Motion to Dismiss Plaintiff's Claims Brought Pursuant to NYLL § 191(3) Is Denied

Plaintiff also alleges that Defendants failed to pay what she was owed upon termination. FAC ¶¶ 248, 258.  Section 191(3) of NYLL provides: "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." NYLL § 191(3).  Plaintiff was terminated on August 10, 2020.  FAC ¶ 156.  She alleges that she was not paid commissions that were owed to her when she was terminated.  *Id.* ¶¶ 129, 131, 247, 257.  Such allegations are sufficient to state a claim for relief pursuant to NYLL § 191(3).  *See Testa v. Carefusion*, No. 14-CV-5202, 2016 WL 4099113, at *6 (E.D.N.Y. Aug. 2, 2016) (declining to dismiss a section 191(3) claim because the Plaintiff had averred that he was owed commissions but was not paid upon his termination); *id.* (collecting cases with the same holding).  In short, Defendants' motion to dismiss Plaintiff's claims brought pursuant to NYLL § 191(3) is denied.

### C.  Defendants' Motion to Dismiss Plaintiff's Claims Brought Pursuant to NYLL § 193 Is Granted

Plaintiff also alleges that Defendants violated section 193 of New York Labor Law.  FAC ¶ 248.  Pursuant to NYLL § 193(1)(b), "[n]o employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee."  NYLL § 193(1)(b).  "In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and

29

not merely a failure to pay wages." *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016) (citing *Kletter v. Fleming*, 32 A.D.3d 566, 567 (3d Dep't 2006)). More specifically, section 193 "was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Komlossy v. Faruqi & Faruqi, LLP*, No. 15-CV-9316, 2017 WL 722033, at \*14 (S.D.N.Y. Feb. 23, 2017), *aff'd*, 714 F. App'x 11 (2d Cir. 2017) (cleaned up).

Here, Plaintiff has not alleged any facts about any specific deductions she claims were wrongfully taken from her pay. Her own characterization of nonpayment suggests that she is alleging a "failure to pay" claim, not a wrongful deduction claim. Her factual allegations focus on the withholding of commissions or being paid late, *see* FAC ¶¶ 47, 63, 79, 81, 124, 126–129, 138; she alleges no facts regarding deductions from her salary or commissions. Her only allegation pertinent to deductions, that "Defendants unlawfully deducted from [her] total commissions," *see* FAC ¶ 130, is incomprehensible. Because section 193 "has nothing to do with failure to pay," and instead governs "the specific subject of making deductions from wages," *see Heap v. CenturyLink, Inc.*, No. 18-CV-1220, 2020 WL 1489801, at \*15 (S.D.N.Y. Mar. 27, 2020) (citation omitted), the absence of facts regarding particular deductions is fatal to her claim.[24] Accordingly, Defendants' motion to dismiss Plaintiff's claims brought under NYLL § 193 is granted.

---

[24]      Section 193 prohibits certain types of deductions from the "wages" of an employee. NYLL § 193. Defendants contend that Plaintiff's commissions do not qualify as wages because they are dependent on Defendants' financial success and profits. *See* Reply, Dkt. 54 at 12–13. Defendants are correct that "profit-sharing arrangements" that are dependent on the financial success of the business are not considered wages under section 193. *See Truelove v. Ne. Cap. & Advisory, Inc.*, 95 N.Y.2d 220, 223–24 (2000). But Plaintiff has adequately pled that her commission arrangement is distinct from the overall profitability of the company and is instead linked to the profits that her own sales created. *See* FAC ¶¶ 39–40 (noting that her commissions are based on a percentage of the sales she generated). Accordingly, Defendants' argument that Plaintiff's commissions are not wages carries little weight. Ultimately, though, it is Plaintiff's failure to plead facts from which the Court can infer that Defendants took deductions from her pay that dooms her section 193 claims.

### D. Defendants' Motion to Dismiss Plaintiff's Claims Brought Pursuant to NYLL § 191-c Is Granted

Plaintiff also contends that Defendants violated section 191-c of New York Labor Law. *See* FAC ¶¶ 248, 258.  Section 191-c requires that "sales representatives" be paid "all earned commissions" within five business days of termination.  NYLL § 191-c(1).  Defendants argue that "sales representatives," as the term is used in NYLL § 191-c, is limited to independent contractors and does not apply to employees.  *See* Mem. of Law at 26 (citing *Goldberg v. Select Indus., Inc.*, 202 A.D.2d 312, 315 (1st Dep't 1994) (noting that § 191-c applies "only to sales representatives who are independent contractors rather than employees")).  In response, Plaintiff appears to have abandoned her claims pursuant to section 191-c and instead argues that Plaintiff's causes of action should survive because they are also brought pursuant to sections 191(1)(c) and 193, which are not limited to independent contractors.  Resp. at 27 n.8; *see also* FAC ¶ 21 (alleging that Plaintiff "was employed" by Defendants).  The Court construes Plaintiff's response as a concession that section 191-c does not apply to her.  Accordingly, the Court dismisses Plaintiff's section 191-c claims.

### E. The Court Denies Plaintiff Leave to Amend Her NYLL Claims

Plaintiff's request for leave to amend her dismissed NYLL claims, *see* Resp. at 30, is denied.  With respect to claims brought pursuant to NYLL § 193, Plaintiff has provided no indication that she could allege any facts tending to show that Defendants took deductions from her pay.  And because Plaintiff contends that she was an employee and not an independent contractor, her claims pursuant to NYLL § 191-c fail as a matter of law; no amendment could cure the deficiency.  In short, Plaintiff's request for leave to amend her NYLL claims is denied, and Plaintiff's claims, to the extent they are brought pursuant to NYLL §§ 193 or 191-c, are dismissed with prejudice.

## V.     Defendants' Motion to Dismiss Is Denied as to Plaintiff's Retaliation Claims

### A.  Applicable Law

Plaintiff brings retaliation claims pursuant to five statutes: Title VII, ADA, NYSHRL,

NYCHRL, and NYLL.  *See* FAC ¶¶ 170–177 (Title VII); *id.* ¶¶ 186–193 (ADA); *id.* ¶¶ 209–216

(NYSHRL); *id.* ¶¶ 232–239 (NYCHRL); *id.* ¶¶ 272–281 (NYLL).  Except for NYCHRL, the

elements of a *prima facie* case of retaliation are essentially the same across the other four

statutes.  Specifically, Plaintiff must allege that (1) she engaged in protected activity, (2) her

employer was aware of her protected activity, (3) her employer took an adverse employment

action against her, and (4) a causal connection exists between the adverse action and the

protected activity.  *Owens v. N.Y.C. Dep't of Educ.*, No. 17-CV-519, 2021 WL 3862974, at *15

(S.D.N.Y. Aug. 30, 2021); *see also Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir.

2013) (Title VII and NYSHRL); *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014)

(ADA); *Williams v. AAA S. New England*, No. 13-CV-855, 2015 WL 864891, at *5 (S.D.N.Y.

Mar. 2, 2015) (NYLL).  Under the NYCHRL, the plaintiff need not plead or prove an adverse

employment action; instead, the plaintiff need only plead and prove that something happened

that would be reasonably likely to deter a person from engaging in protected activity.  All of the

other elements are essentially the same.  *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434,

446 (S.D.N.Y. 2011).

Defendants argue that Plaintiff has not adequately alleged the fourth element of the *prima*

*facie* case, which requires that Plaintiff plead a causal connection between an alleged adverse

action and a protected activity.  Mem. of Law at 21–22.  Proof of causation can be either "(1)

indirect[], by showing that the protected activity was followed closely by discriminatory

treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct; or (2) direct[], through evidence of retaliatory

animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (alteration omitted)).  With respect to indirect proof of causation, temporal proximity is enough to plead a *prima facie* case of retaliation if the proximity is "very close."  *Dhar v. City of New York*, 655 F. App'x 864, 865–66 (2d Cir. 2016) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014)).  Courts in this District generally find two or three months to be the outer limit for alleging the existence of causation based on temporal proximity.  *See, e.g.*, *Lambert v. Trump Int'l Hotel & Tower*, No. 15-CV-582, 2018 WL 1633765, at *11 (S.D.N.Y. Mar. 31, 2018) ("[T]he passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line." (citations omitted)); *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 586 (S.D.N.Y. 2017) ("Generally, three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation." (cleaned up)).  Thus, Plaintiff's retaliation claims can survive a motion to dismiss if she has alleged that the protected activities in which she engaged occurred within two to three months of the alleged retaliatory adverse employment action.

Defendants further contend that because "Plaintiff has pleaded a legitimate, non-discriminatory business reason for her termination, her claims for retaliation must be dismissed."  Mem. of Law at 22.  Defendants appear to be referring to the fact that Plaintiff "surreptitiously recorded meetings with G&W's managers and buyers on company premises without the parties' knowledge or consent."  FAC ¶ 157.  But Defendants' proffer of a legitimate non-discriminatory reason for the allegedly retaliatory adverse employment action cannot be considered on a motion to dismiss.  *See Menaker*, 935 F.3d at 30 ("If a plaintiff successfully establishes a *prima facie case*, the burden shifts to the employer at the summary judgment stage to articulate some legitimate, nondiscriminatory reason for the adverse employment action."

33

(cleaned up)); *Littlejohn*, 795 F.3d at 311 ("The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification."); *Levy v. Leg. Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019) ("[A]ny inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial."). Tellingly, the eight cases that Defendants cite to support their contention that a proffered legitimate reason may defeat causation at the motion to dismiss stage are all summary judgment decisions. *See* Mem. of Law at 21–23 (citing eight summary judgment cases). Accordingly, at this stage of the litigation, the Court does not consider what role, if any, Plaintiff's recordings played in precipitating the adverse employment actions she claims to have experienced.[25] All the Court considers at the motion to dismiss stage is whether Plaintiff has made out a *prima facie* case of retaliation under the five statutes.

## B. Plaintiff Has Adequately Alleged a *Prima Facie* Case of Retaliation Pursuant to Title VII, NYSHRL, and NYCHRL

Plaintiff has adequately alleged a *prima facie* case of retaliation pursuant to Title VII, NYSHRL, and NYCHRL based on Plaintiff's protected activities vis-à-vis alleged sex discrimination. Defendants only contest the fourth element of Plaintiff's *prima facie* case; they contend that Plaintiff has not sufficiently pled a causal connection between an alleged adverse action and alleged protected activity. Mem. of Law at 22–23.[26] The Court disagrees. Plaintiff

---

[25]     Plaintiff makes a lot of hay out of the supposed difference between her covert recording of certain conversations and her submission of those recordings to Defendants. Resp. at 24–25. She contends that although "Plaintiff's recording of conversations was not itself protected," her "submission of those recordings through counsel to support her claims undoubtedly was." *Id.* at 25. The Court declines to engage in the semantic gymnastics required to differentiate between the recordings themselves and the submissions of those same recordings.

[26]     Although Defendants do not dispute that Plaintiff has adequately alleged the third element of the *prima facie* case of retaliation (an adverse action), many of the adverse actions alleged by Plaintiff are clearly untimely. For purposes of Plaintiff's Title VII retaliation claims, the Court may only consider alleged "unlawful employment practices" that occurred within the statutory time-period, *i.e.*, from November 15, 2019 onwards. *See Morgan*, 536 U.S. at 105 (2002) (holding that the same statutory time-period applies to discrimination and retaliation claims). To

has adequately alleged that she engaged in protected activities that were followed closely by discriminatory treatment, and she has pled sufficient facts from which the Court can infer retaliatory animus.

With respect to temporal proximity, Plaintiff adequately alleged that her complaints of sex discrimination (protected activities)[27] were followed closely by the withholding of her commissions and her termination (adverse employment actions).  For example, Plaintiff alleges that "on or around June 15, 2020," Plaintiff complained to Maleh about "Defendants' harassment of her for pumping at work."  FAC ¶ 120.  Plaintiff further alleges that in that same conversation, Maleh told Plaintiff that "Defendants would continue to withhold her long overdue earned commissions."  Id. ¶ 124.  Given that Maleh informed Plaintiff of the adverse employment action during the same conversation that Plaintiff engaged in a protected activity, there is no question that the two were temporally proximate to one another.  Additionally, Plaintiff alleges that on June 30, 2020, she "asserted claims against Defendants" for pregnancy discrimination by sending Defendants a letter through counsel.  Id. ¶ 140.  She also alleges that she was terminated a little over one month later, on August 10, 2020.  Id. ¶ 156.  The temporal proximity between the written complaint (protected activity) and the termination (adverse action) is sufficient to support an inference of causation at this stage of the proceedings.  See Kassel v. City of Middletown, 272

the extent Plaintiff relies on alleged adverse actions that occurred before November 15, 2019, including those that purportedly occurred before she returned from her maternity leave and on the day she returned from leave, see FAC ¶¶ 50–51, 56–60, 63–65, 66–69, 70–84, those alleged adverse employment actions may not be considered as part of her Title VII retaliation claims.  For the purposes of NYSHRL and NYCHRL retaliation claims, those earlier occurring alleged adverse actions may be considered because they fall within the three-year statute of limitations applicable to both statutes.  Taylor, 207 F. Supp. 3d at 302; Volpe, 915 F. Supp. 2d at 292.  But because Plaintiff has stated a claim as to alleged adverse employment actions that occurred within 300 days of the EEOC filing, the Court need not consider here whether Plaintiff has also stated a claim under NYSHRL and NYCHRL with respect to allegedly earlier occurring adverse actions.

[27]    There is no dispute that Plaintiff's alleged complaints to her supervisors constitute protected activities.  See Giscombe v. N.Y.C. Dep't of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) ("Informal complaints to supervisors, instituting litigation, or filing a formal complaint are protected activities under Title VII." (cleaned up)).

F. Supp. 3d 516, 538 (S.D.N.Y. 2017) ("The interview took place less than two months after the discussion with Amodio, an amount of time that the Second Circuit has found to be sufficient for the purpose of establishing temporal proximity." (citations omitted)).

Moreover, Plaintiff has also alleged direct evidence of retaliatory animus. Defendants' many remarks disparaging Plaintiff for her decision to breastfeed and to pump, *see* FAC ¶¶ 51, 68, 78, 83, 84, 87, 88, 89–90, 93, 94–98, 102–103; *see also* Resp. at 14–15 (listing the 23 comments found in the FAC), support an inference that the requisite causation existed. Defendants only argument in response is that Plaintiff cannot establish causation on that basis for the same reasons they argue Plaintiff could not show an inference of discrimination as part of her sex discrimination claims. *See id.* at 23 (cross-referencing the sections of Defendants' brief discussing Plaintiff's *prima facie* case of sex discrimination). But for the same reasons that the Court finds that Plaintiff adequately pled that the adverse employment actions occurred under circumstances giving rise to an inference of discriminatory intent, the Court finds that Plaintiff has adequately pled that a causal connection exists between the alleged adverse actions and the protected activity.

### C. Plaintiff Has Adequately Alleged a *Prima Facie* Case of Retaliation Pursuant to the ADA, NYSHRL, and NYCHRL

Defendants do not make any arguments specific to Plaintiff's retaliation claims based on her protected activity associated with her claimed disability; they simply argue that Plaintiff has not made out the fourth element of a *prima facie* case as to any of Plaintiff's retaliation claims. Mem. of Law at 21–23. But here too Plaintiff has sufficiently pled a causal connection between her alleged protected activities connected to her claimed disability and Defendants' purported adverse employment actions by alleging temporal proximity between the two. Plaintiff alleges that in the same conversation that she requested a reasonable accommodation for her generalized

anxiety, which is a protected activity under the ADA,[28] Maleh advised her that Defendants would continue to withhold her commissions, which is an adverse employment action.  FAC ¶¶ 121, 124.  Additionally, Plaintiff alleges that she asserted claims of disability discrimination by sending Defendants a letter through counsel (a protected activity) and was terminated about a month later (an adverse employment action).  *Id.* ¶¶ 140–141, 156.[29]  Given the temporal proximity between the alleged protected activities and the adverse actions, for purposes of her retaliation claims associated with her claimed disability, Plaintiff has adequately alleged a causal connection.

### D.  Plaintiff Has Adequately Alleged a *Prima Facie* Case of Retaliation Pursuant to NYLL

Plaintiff alleges that she complained to Defendants that failing to pay her commissions violated the terms of her employment.  FAC ¶¶ 124–125.  Such complaints are protected activities under NYLL § 215.  *See Williams*, 2017 WL 1592556, at *6 ("The employee's complaint need not cite a specific provision of the N.Y.L.L. alleged to be violated, but the employee must reasonably believe that the employer is violating the Labor Law, and must have stated a complaint about conduct that violates the Labor Law." (cleaned up)).  For the reasons

---

[28]   *See Gorbea v. Verizon New York, Inc.*, No. 11-CV-3758, 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014) ("Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities."); *see also Limauro*, 2021 WL 466952, at *10; *Goonan v. Fed. Res. Bank of N.Y.*, 916 F. Supp. 2d 470, 485 (S.D.N.Y. 2013).

[29]   Plaintiff also alleges that her termination occurred during a reasonable accommodation interactive process. *See* FAC ¶¶ 11, 147–149, 153–156.  "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *Jackan v. New York State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000).  *See also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").  Neither party discussed whether participation in a reasonable accommodation interactive process constitutes a protected activity for the purposes of an ADA, NYSHRL, or NYCHRL retaliation claim. Because Plaintiff has stated a claim for disability retaliation based on other alleged protected activities, the Court declines to consider whether participation in an interactive process is a protected activity.

discussed in the previous section, Plaintiff's complaint regarding failure to pay commissions constitutes a complaint about conduct that violated the NYLL.

Plaintiff has alleged the requisite nexus between her complaints about her commissions and Defendants' alleged adverse employment actions. Plaintiff alleges that she complained about Defendants' failure to pay commissions on or about June 15, 2020. FAC ¶¶ 124–125. Plaintiff further contends that she was terminated on August 10, 2020, *id.* ¶ 156, and that upon termination, she was not paid the remaining amount of commissions owed to her, *id.* ¶ 129. Both of those alleged adverse employment actions are temporally proximate to her June 15, 2020 complaint. Accordingly, Plaintiff has stated a claim of NYLL retaliation.[30]

In short, when viewed in the light most favorable to Plaintiff, she has stated a claim for retaliation pursuant to Title VII, ADA, NYSHRL, NYCHRL, and NYLL. Defendants' motion to dismiss those claims is therefore denied.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss the FAC is granted in part and denied in part. The Court orders the following:

1. Defendants' motion to dismiss Plaintiff's Title VII, NYSHRL, and NYCHRL claims of sex discrimination is DENIED.

2. Defendants' motion to dismiss Plaintiff's Title VII, NYSHRL, and NYCHRL claims of hostile work environment is DENIED.

---

[30] The statute of limitations for NYLL claims is six years. *See* NYLL § 663(3). Plaintiff alleges that Defendants retaliated against her by withholding her commissions and by failing to pay her for work completed on her first day back from maternity leave because she complained about Defendants' failure to provide her with a reasonable lactation space, purportedly in violation of NYLL § 206-c. *See* FAC ¶¶ 66–84, 277. Those claims allegedly occurred within the six-year limit, and accordingly, may be actionable retaliation under NYLL. But because Plaintiff has stated a claim for NYLL retaliation as to other protected activities, the Court need not consider that contention for purposes of deciding the motion to dismiss.

3.  Defendants' motion to dismiss Plaintiff's disability discrimination and failure to
    accommodate claims brought pursuant to the ADA, NYSHRL, and NYCHRL is
    GRANTED.  Plaintiff's ADA discrimination and failure to accommodate claims are
    dismissed with prejudice, and Plaintiff's NYSHRL and NYCHRL disability
    discrimination and failure to accommodate claims are dismissed without prejudice.

4.  Defendants' motion to dismiss Plaintiff's New York Labor Law claims are GRANTED in
    part and DENIED in part.  Defendants' motion to dismiss Plaintiff's claims brought
    pursuant to NYLL § 191(1)(c) and § 191(3) is denied.  To the extent that Plaintiff's
    claims are brought pursuant to NYLL § 193 and § 191-c, those claims are dismissed with
    prejudice.

5.  Defendants' motion to dismiss Plaintiff's retaliation claims brought pursuant to Title VII,
    ADA, NYSHRL, NYCHRL, and NYLL is DENIED.

The parties are directed to meet and confer about revising their Electronically Stored
Information ("ESI") protocol and their discovery schedule in light of this opinion.  If the parties
are unable to agree on an ESI protocol (including the distribution of costs associated with ESI
discovery), the Court will refer the dispute to the assigned Magistrate Judge for resolution.  The
parties must submit a joint letter by **October 8, 2021**, with an agreed-upon discovery schedule
or, if the parties are unable to agree, with each party's proposed schedule, and a statement
whether the parties were able to reach an agreement regarding an ESI protocol and associated
costs.

The Clerk of Court is respectfully directed to close the open motion at docket entry 41.

**SO ORDERED.**

Date:  September 19, 2021                          **VALERIE CAPRONI**
       New York, New York                         **United States District Judge**

39